Good morning, your honors. May it please the court, my name is Ina Lipkin and I am here today on behalf of the petitioner Nirmal Singh. Mr. Singh contends that the board erred in sustaining the IJ's denial of asylum based on incredibility. The petitioner contends that the factors the IJ relied on to make her incredibility finding are just not supported by substantial evidence. She relied on speculation and conjecture for the most part to find him incredible on either mischaracterization of the record or on de minimis inconsistencies that have no bearing on his past persecution by the Indian authorities. For example, she made, she mischaracterized his responses when asked by both his attorney and government counsel regarding the harm he suffered. As noted in petitioner's brief, there is a copy of the transcript which clearly indicates that he was not being evasive or negligent in his response to the petitioner. The IJ did not look at his testimony as a whole. That is correct. There was also an issue, there was a tape change or a tape malfunction, and I think that might have contributed to her error. I don't think she had an agenda against the petitioner, but I don't think she carefully reviewed the record. And there are also many times in which she relied on speculation, requesting that the petitioner surmise what third parties might have been thinking or were motivated by, which is completely unsupported by case law. Could we focus for a moment on the time limitation on the asylum claim? Are you talking about whether he timely filed? Correct. Right. Now, was the judge's determination based on credibility, or was it based on a misapprehension of law with respect to what had to be proven, whether you had to prove the exact date of his entry or simply that he had entered within one year? I believe that the IJ relied on her incredibility finding to determine that he failed his statement. I believe that the IJ relied on her incredibility finding to determine that he failed his statement. I believe that the IJ relied on her incredibility finding to establish timely filing for asylum. I believe that had she found him to be credible and accepted his documentary proof, such as the affidavits from India and from the individual with whom he began to live with immediately upon coming to California, then I believe she would have come to a different result. Refresh my recollection. If we accept your client's testimony, if it had been accepted, how he filed for asylum, how long after his entry? He entered in December of 2000, and he filed approximately 8 to 9 months later in August of 2001. Since this is a pre-Real ID Act case, the IJ would have had to have found his credible testimony alone, without documentary proofs, a sufficient basis to find that he timely filed. But even after the Real ID Act, the IJ may still find credible testimony alone to be sufficient. However, if looking at this case, the Court should find that not only was he credible and consistent, but he really did submit sufficient documentary proofs. He had a letter from his mother, who clearly explained she was with him at the Delhi airport when he departed. I believe that was also December of 2000, if not November 2000, described his departure. He obtained the best evidence he could from the individual with whom he resided in California. And in the pre-Real ID Act regulations, that was sufficient for him to establish his date of entry. I think I'll leave the remaining time for rebuttal. Roberts. May it please the Court, Donald Kuvion for Respondent. Your Honors, much of what the Petitioner says about the adverse credibility finding has substance. However, there are two bases in the finding that enjoy support in the record. In regard to testimony, it was the Petitioner's statement that his father, who by then was deceased, had sent his mother's affidavit. The immigration judge relied upon that factual error. She also relied upon two country reports or profiles. One is from the British Home Office, which in large part relies upon a Danish report. And the other is our own State Department's asylum claims profile on India. She hit the nail, shall we say, on the head in these reports. They fully support the adverse credibility finding because almost everything the Petitioner proffered about his experience is in contradiction to the country reports and profiles. We're talking here about a Sikh or an alleged Sikh who is nothing but a farmer, who did not go beyond high school. He did not attend university. He doesn't belong to any student organization. He's not an activist. He has nothing about him to indicate that he himself would be a target for police inspection. The only thing, moreover, that he proffered, that they ever wanted from him, assuming it all happened, is that they wanted to find his friend Gurdjieff, who is a student. But we don't know what Gurdjieff was wanted for, other than he's a student and he's a member of the All India Sikh Student Federation, which is a legal organization. There are splinter groups, however, but we don't know what Gurdjieff did. So assuming that the Petitioner was mistreated on one, two, or three occasions by the police, all of which came after the insurrection had been put down in 93, that we don't know what it was about other than seeking Gurdjieff. And we know from the country reports, and we know from his own testimony, that it was not because he was a Sikh. It's not because he was anything that enjoys a statutorily protected ground in asylum and protection law. He himself admitted at one point in testimony that yes, it's on cross, I believe, that yes, it could have been a police shakedown. The police in Punjab are not reticent about taking bribes, and they are known, as all Indian police are known, for being abusive of their prisoners. But whatever they do to them does not mean that it is on account of a protected ground. It's just police abuse. So what we come down to in the case is the one testimonial discrepancy that the judge relied upon, a discrepancy which is important and goes to and was not pursued before the board. This Court is the first time the Petitioner has offered his explanation that it was a slip of the tongue. And then the other are the country reports. The insurgency was broken in 93. I'm sorry, Your Honor. What is the inconsistency that you do rely on? How does it go to the heart of the asylum claim, as we have used that term in our case here? Yes, Your Honor. If that had been, say, the difference of saying, well, my brother, no, my sister sent me a document, then it wouldn't. In this case, it was his mother's own affidavit, and it came shortly after her husband died and before the hearing. And the Petitioner, at that sequence in the transcript, is shown the four affidavits and three documentary exhibits. He identifies all of them, and he states how they came to him. And he is correct in every regard except for the affidavit of the father, which he said his mother sent him. She had also sent him other documentation, but no affidavits. And it is ‑‑ it's a borderline, I admit that. It's a borderline matter. But given that her husband had died and that the Petitioner knew who sent him what, his error is ‑‑ it does leave out to suggest that maybe in everything it's not quite what it appears to be. Another item that was not relied on that's very curious is that he says that on the first occasion he was beaten 13 or 14 minutes. Now, that's either someone who's guessing or it's someone who's just telling a story. Those are small indicia that a trial attorney would jump on with a jury for credibility. The affidavits, moreover, add very little to the case. They're conclusory. They never state why anything happened to anybody. The only thing we have in this record is the Petitioner's own testimony, which lies in the face of the country reports, which ‑‑ And your view is the country reports are so categorical that they would make a liar out of anyone who said that a young person with this background No, Your Honor, I'm not saying that. No, I'm not saying that. I'm saying they in no way lend support. They certainly are persuasive. In some instances they might be conclusive. But, for example, someone could say I was part of something and the country report could say, well, so what? That group never had a problem with anybody. But that's not our case here. And the reports here in every regard contradict his claim. And the timing of the claim comes years after the insurrection had ended. And there was no active terrorism thereafter in Punjab. So I'm saying to the Court that in this instance those reports are instrumental and determinative. If there are no further questions, Your Honors. Thank you. There can't be any. Thank you. Your Honors, I'd like to address some of the issues raised by counsel. In regards to the Petitioner's obvious mistake, slip of the tongue regarding the fact that his father sent him the affidavit when he couldn't have done so because he had died, again, just a slip of the tongue. This Petitioner is extremely unsophisticated. He was held back in school three years. Counsel, there were other things that the immigration judge relied on that counsel didn't mention that seemed to be supported by the record. For example, the Petitioner couldn't name the city in England where he had his layover, and he testified first that he went to Vancouver, and then he testified that he went to Toronto. So he didn't have a grasp of the places where he left from or the places where he went to. So, you know, and in addition, I believe the immigration judge relied on the inconsistency of what grade he finished, whether he finished the 8th grade, whether he finished the 11th grade. Now, granted, those may not be giant, but they are things that the immigration judge noted. What is your response to that? I'll start off first with the alleged inconsistency about his level of education. As noted in the Petitioner's brief, his I-589 asylum application does not state that he completed the 11th grade. It just says that he went to school for 11 years, which he corroborates with his testimony in which he indicates, well, I finished 8 grades, but I had to do 3 repeatedly. So 8 plus 3 is 11, and that does corroborate his application. That also reflects on his level of low education and his lack of sophistication that he doesn't remember foreign names, such as the name of London or Vancouver, that he had some confusion. He could remember perhaps countries, England, Canada, United States. So that is a reasonable conclusion. But the question for us isn't whether in the first instance we would use these things to find your client not credible. The question for us is whether the record compels someone to take the kinder, gentler interpretation of those inconsistencies, or whether it's permissible at all to view those inconsistencies as a form of evasion and lack of credibility. Well, Your Honor, these inconsistencies that you particularly noted are not ones that reflected the Petitioner's desire to enhance his claim, to exaggerate anything. In fact, it was detrimental to his claim. Now, if he ---- All inconsistencies are to the extent that they cause the immigration judge to disbelieve somebody. But that really isn't the test, is it? Well, I do believe that this being a pre-real ID case, if the inconsistencies are the kinds that go to the heart of the claim, which is really the analysis the Court should be concerned with. Well, perhaps the educational level doesn't, but what about where you came from and where you went to when you were allegedly fleeing for your life? Well, Your Honor, there was some talk about what he might have said at the asylum office, and it doesn't appear that there was any inconsistency with what he said then. So it is entirely plausible that at the time of the hearing, the anxiety generated by that kind of proceeding, which he was deprived of, he was never taken before a court of law in India, that he might have been a little confused in terms of the names of the cities, which, again, are foreign cities. It might have been, but, again, I guess I'm just concerned because of our standard of review. We're not a jury deciding whether, you know, we will forgive these inconsistencies. Well, Your Honor, if you were to strike down all the other factors that the I.J. relied upon to find him incredible, as argued in his brief, and find that none of those points would render him incredible, and all you were left with was did he finish the 8th or 11th grade, could he remember the word London or Toronto or Vancouver, I don't think you'd be able to find that that's a substantial basis. What do we do with the demeanor findings that we normally give great deference to, as we've said in Stresla and other cases where he says this person was evasive in the way that he was sitting and answering questions? What do we do with that? Well, Your Honor, again, I don't want to go over everything that's already in the issues. A close reading of the record shows he was not evasive. He asked for clarification several times, and again, not being sophisticated and not having the experience of being before a tribunal, it would be, I think, expected and normal for him to ask for clarification. He always did respond to the questions posed to him. I just want to address a few more things that came up. Your time has expired. I have 25 seconds? No, you're in the red. Oh, I'm sorry. Okay. All right. Happens all the time. Are there any further questions? Thank you. Thank you.
judges: Schroeder, Ripple, Graber